**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVSION**

| | |
|---|---|
| ARCA INVESTMENTS, JESSICA SORDO, JORGE SORDO, LORENIA BUSTAMANTE, JOSE ECHEVARRIA, PABLO HERNANDEZ, HOLZNER VOLKMAR, ALVARO GUIDO, MARITZA GUIDO, CESAR LOERA, RIFE LTD., CASTULO AGUIRRE, HUMBERTO PENICHE, ANTONIO BUSTAMANTE, JOSE ANTONIO SUAREZ CARZARES, BRAVA MUSIC LTD., VICTOR ALFARO ARAUJO, GRACIELA QUEVEDO, SAMUEL RICARDO SERRANO ROJAS, FELICITY URSULA RAINNIE, AND JORGE ARGANIS<br><br>     Plaintiffs,<br><br>  v.<br><br>PROSKAUER ROSE, LLP,<br>P. MAURICIO ALVARADO, and<br>CHADBOURNE & PARKE, LLP<br><br>     Defendants. | Civil Action No.:  3:15-CV-2423-N<br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS PROSKAUER ROSE LLP AND CHADBOURNE & PARKE, LLP'S MOTIONS TO DISMISS** |

Plaintiffs in the above-captioned action are in receipt of the Motion to Dismiss filed

by Defendants Proskauer Rose, LLP ("Proskauer") and Chadbourne & Parke, LLP

("Chadbourne"),[1] and respectfully tender the following response:

---

[1] These motions can be found at docket numbers 19 and 21 (Oct. 30, 2015), respectively, in the above-captioned case.  This Opposition is a unified opposition to both motions, which will be referred to herein as "Proskauer's Motion" or "Chadbourne's Motion," respectively, and "Defendants' Motions" collectively.

# <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT ........................................................................................... 1

II.   ARGUMENT ...................................................................................................................... 3

A.   Defendant Proskauer Rose Has Availed Itself of Diversity Jurisdiction In Federal Court As A Plaintiff, And Is Judicially Estopped From Contesting Diversity Jurisdiction ................. 3

B.   Despite Years Of Litigation In Janvey et al. v. Proskauer Rose LLP et al., Defendants Abandoned These Arguments In Factually Identical Proceedings In This Court ...................... 6

C.   The "Stateless Person" Line Of Case Law Is Anachronistic, Heavily Criticized, And Contrary To The Central Purpose Of Diversity Jurisdiction ..................................................... 7

D.   The Presence Of Foreign Plaintiffs Does Not Defeat Diversity Jurisdiction In This Case 11

E.   Plaintiffs Have Alleged Sufficient Facts To Support Diversity Jurisdiction ..................... 14

F.   Plaintiffs Should Be Entitled To Amend Their Complaint If Necessary ........................... 15

III.   CONCLUSION ................................................................................................................. 16

### TABLE OF AUTHORITIES

<u>**CASES:**</u>

*Carden v. Arkoma Assocs.,*
  494 U.S. 185, 196 (1990) ........................................................................................... 1, 2, 8

*Chadbourne & Parke LLP v. Remote Solution Co., Ltd.,*
  Case No. 1:05-cv-00386 (S.D.N.Y. Feb. 4, 2005)...................................................... 1, 12

*Commercial Lines, LLC v. United States,*
  135 S. Ct. 956 (2015) ............................................................................................................ 4

*Dresser Indus. v. Underwriters at Lloyd's of London,*
  106 F.3d 494, 500 (3d Cir.1997) ................................................................................... 3, 15

*Gabarick v. Laurin Mar. (Am.) Inc.,*
  753 F.3d 550, 553 (5th Cir. 2014) ................................................................................... 4, 5

*Goble v. Marsh,*
  684 F.2d 12, 17 (D.C.Cir.1982) ......................................................................................... 15

*Hertz v. Friend,*
  559 U.S. 77 (2010) .............................................................................................................. 13

*In re Katrina Canal Breaches Litigation,*
  342 F. App'x 928 (5th Cir. 2009)....................................................................................... 15

*Iraola & CIA, S.A. v. Kimberly-Clark Corp.,*
  232 F.3d 854, 858 (11th Cir. 2000) ................................................................................... 14

*Janvey et al. v. Proskauer Rose LLP et al.,*
  Case No. 1:12-cv-00155-CKK (D.D.C. July 24, 2014)................................................... 6, 7

*Karazanos v. Madison Two Assocs.,*
  147 F.3d 624, 627 (7th Cir. 1998)..................................................................................... 14

*Mattern & Assocs. v. Latham & Watkins LLP,*
  Case No. 2:13-cv-06592-CDJ (E.D. Pa. Nov. 13, 2013)..................................................... 2

*New Hampshire v. Maine,*
  532 U.S. 742 (2001) .............................................................................................................. 4

*Newman-Green, Inc. v. Alfonzo-Larrain,*
  490 U.S. 826, 831 (1989) ................................................................................................ 9, 16

*Proskauer Rose LLP v. Blix Street Records Inc. et al,*
  Case No. 2:06-cv-4040 (C.D. Cal. June 26, 2006)................................... 1, 3, 4, 8, 11, 12, 15

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,*
  181 F.3d 410, 415–16 (3d Cir.1999) ................................................................................... 9

*Swiger v. Allegheny Energy, Inc.,*
  540 F.3d 179, 188 (3d Cir. 2008) .................................................................................. 9, 10

*Whitmire v. Victus Ltd.,*
  212 F.3d 885, 887-88 (5th Cir. 2000)............................................................................ 15, 16

<u>**Secondary Sources**</u>

13B Charles Alan Wright et al., Fed. Practice & Procedure § 3604, at 396 (2d ed. 1984) ........................15

<u>**Statutes and Other Authorities**</u>

§1332(a) .........................................................................................................................5, 14
§1332(a)(1) ..........................................................................................................................8
§1332(a)(2) ..........................................................................................................................8
§1332(a)(3) ......................................................................................................... 2, 13, 14, 18
28 U.S.C. §1332(a)(3).................................................................................................... 12, 14

28 U.S.C. §1332(c)(1)................................................................................................................9, 13

28 U.S.C. §1631........................................................................................................................6

Federal Rule of Evidence 802....................................................................................................5

# I.   <u>PRELIMINARY STATEMENT</u>

Defendants' Motions needlessly complicate what is at base a straightforward issue: whether a group of plaintiffs, citizens of both foreign countries and the United States, can sue two partnerships that conduct substantial business in the state of Texas.  The answer, is yes.

Defendants' Motions fail for at least five reasons.  First and foremost, Proskauer Rose itself has availed itself of diversity jurisdiction in a suit against a former client for fees in the Central District of California, and in fact relied on subject matter jurisdiction on that basis ***up through and including trial***.  Now that it finds itself hailed into court as a defendant instead of a plaintiff, Proskauer seeks to argue the exact opposite to this Court.  Chadbourne & Parke similarly told a federal court in New York that it was "a citizen of a foreign state" in 2005.  These statements bind both Defendants under the principle of judicial estoppel, and they should not be allowed to take advantage of this Court and the judicial system by claiming otherwise.

Second, and despite the procedural history of the U.S. Receiver's case against these two entities—which both have improperly implied should control the result of this case—Defendants promptly abandoned any "stateless person" arguments once the Receiver re-filed its case here in the Northern District of Texas.  We can now assume this is because both Defendants have already told other federal district courts different stories than they seek to tell here.[2]  This Court should not entertain conduct which other courts, including the United States Supreme Court, have characterized as threatening the integrity of the judicial system.

Third, Defendants' rely on the "stateless person" line of case law that is anachronistic, heavily criticized, and contrary to the central purpose of diversity jurisdiction.   Although Defendants describe the theory as "well-settled," even the Supreme Court in the *Carden* decision

---

[2] *See Proskauer Rose LLP v. Blix Street Records Inc. et al*, Case No. 2:06-cv-4040 at ¶5 (C.D. Cal. June 26, 2006) *and Chadbourne & Parke LLP v. Remote Solution Co., Ltd.*, Case No. 1:05-cv-00386 (S.D.N.Y. Feb. 4, 2005).

as early as 1990 realized that the principle was "***technical, precedent-bound, and unresponsive to***
***policy considerations*** raised by the changing realities of business organization." *Carden v.*
*Arkoma Assocs.*, 494 U.S. 185, 196 (1990).  Apparently applied differently and at the choosing of
Defendants, their arguments that each is a "stateless person," and therefore is not subject to
diversity jurisdiction in federal court, would apply in equal measure to ***any federal case*** not
involving a federal question.  Under Defendants' understanding of the diversity statute, Defendants
(or any international law firm, for that matter) could not be plaintiffs or defendants in any such
case.  Defendants are inviting this Court to proclaim an "international law firm" privilege that
would close the courthouse doors to prospective plaintiffs and force those individuals to travel to
various state courts around the country to vindicate their rights against defendants like these.  Of
course, this belies the purpose of diversity jurisdiction and the facts of these law firms' judicial
activity as applied—law firms with international partners sue and are sued in federal court based
on diversity jurisdiction every day.[3]  This Court should decline Defendants' invitation.

Fourth, Defendants also argue that the existence of foreign plaintiffs on both sides of the
litigation defeats diversity jurisdiction, but this argument can be dismissed out of hand as there are
actually U.S. citizens on both sides of the litigation with additional foreign parties—the
prototypical example of jurisdiction under §1332(a)(3) which Defendants pejoratively refer to as
a "jurisdictional pigeonhole."  Likewise, their fifth and final arguments that Plaintiffs' affirmative
jurisdictional allegations are insufficiently detailed are of no moment—courts have rejected similar
arguments time and again, including the Third Circuit, which succinctly held that "[f]or diversity

---

[3] These include (1) Proskauer Rose, ***one of the Defendants in this case***, as described more fully herein, and (2)
Latham & Watkins LLP, an international law firm with offices in at least twelve countries.  *See, e.g. Mattern &*
*Assocs. v. Latham & Watkins LLP*, Case No. 2:13-cv-06592-CDJ (E.D. Pa. Nov. 13, 2013) (breach of contract case
alleging diversity jurisdiction; Latham & Watkins filed its answer on Oct. 16, 2014).

purposes, an alien is an alien is an alien." *Dresser Indus. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 500 (3d Cir.1997).

So, the real question at the core of Defendants pleadings is simply whether Defendants should be permitted to pick and choose which jurisdictional rules to follow, leaving the courts and potential plaintiffs no choice but to fall in line according to Defendants' preference. Defendants' veiled accusations that the Plaintiffs have wasted their time are more appropriately directed internally; it is ***Defendants*** who have taken conflicting positions on this issue both with other federal courts and before this Court. Plaintiffs respectfully submit that the Federal Rules of Civil Procedure and applicable law afford no such preferential flexibility, that diversity jurisdiction over both Defendants is proper, and urge this Court to deny Defendants' motions in their entirety.

## II.    ARGUMENT

### A.  Defendant Proskauer Rose Has Availed Itself of Diversity Jurisdiction In Federal Court As A Plaintiff, And Is Judicially Estopped From Contesting Diversity Jurisdiction

In the first instance and before all of Plaintiffs' other arguments regarding the inapplicability of the "stateless person" doctrine, the Court can easily deal with the issue as to Defendant Proskauer Rose LLP. Despite its protestations here, in the *Janvey* action referenced herein, and in Defendants' moving papers, Proskauer invoked diversity jurisdiction when it sued one of its former clients for breach of contract in the United States District Court for the Central District of California. This case, *Proskauer Rose LLP v. Blix Street Records Inc. et al*, was filed on June 26, 2006 and alleged diversity as the sole basis for federal jurisdiction over Proskauer's claims. *See Proskauer Rose LLP v. Blix Street Records Inc. et al*, Case No. 2:06-cv-4040 at ¶5 (C.D. Cal. June 26, 2006) ("This Court has original jurisdiction under 28 U.S.C. § 1332 because

this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.").[4]

Proskauer relies on the declaration of Delia M. Spitzer to support its contention that it should be considered "stateless" for purposes of diversity jurisdiction. According to a sworn declaration submitted by Ms. Spitzer in October 2012 (and reaffirmed in October 2015), she has been a partner at Proskauer Rose since 1992 when she began working in Proskauer's Paris office. *See* App'x In Support of Def. Proskauer Rose LLP's Mot. to Dismiss Pl.'s Compl., Dkt. No. 20 at App. 32 (Oct. 30, 2015). Thus, Ms. Spitzer was as much an international partner of Proskauer Rose LLP in June 2006 as she was in July 2015 when this case was filed. Plaintiffs and Defendants apparently disagree about what significance, if any, that fact has on whether this court has jurisdiction over Proskauer, but that fact is undisputed.

The Supreme Court has said that the purpose of judicial estoppel is "to protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742 (2001). The Court went on to describe the doctrine generally as "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he [or she] may not thereafter, simply because his [or her] interests have changed, assume a contrary position. . . .'" *Id.* at 749 (internal citations omitted). The Fifth Circuit unequivocally agrees. *See Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014) *cert. denied sub nom. Am. Commercial Lines, LLC v. United States*, 135 S. Ct. 956 (2015) (quoting *New Hampshire v. Maine*). The *Gabarick* court went on to summarize the test for judicial estoppel in the Fifth Circuit:

> In this circuit, at least two requirements must be met before a party's argument may be judicially estopped. First, the estopped party's position must be 'clearly

---

[4] As of this filing an electronic version of this Complaint was not available online through the CM/ECF system, so Plaintiffs have attached a complete copy as received by the Clerk's Office for the Central District of California hereto as **Exhibit 1**.

inconsistent with its previous one,' and second, 'that party must have convinced the court to accept that previous position.'

*Gabarick*, 753 F.3d at 554 (internal quotation marks and citation omitted). Here, these factors have clearly been satisfied. Proskauer's position in the *Blix Street Records* case (that diversity jurisdiction existed because the controversy was between citizens of different states) is clearly inconsistent with its position in the present case (that no diversity jurisdiction exists). Proskauer also clearly convinced the court to accept that previous position—***Proskauer took that case to trial and won***. It relied on its jurisdictional allegations throughout several years of litigation up through and including a trial. Taken together, it is clear that Proskauer's allegations in the *Blix Street Records* case are a prototypical example of conduct warranting judicial estoppel.

Proskauer may argue in response that it should not be estopped by its conduct in a different proceeding in which these Plaintiffs were not involved—that argument is a red herring, and confuses the requirements for judicial estoppel with those of *res judicata*. Proskauer's conduct here is most similar to Federal Rule of Evidence 802, which provides for the admission of statements made by party opponents. Proskauer's complaint in the Central District of California is, inconvenient as it may be, an admission (or rather, an affirmative allegation) that it is a citizen within the meaning of §1332(a) and that it sought to invoke diversity jurisdiction in a dispute between it and another corporation.

Judicial estoppel is an equitable doctrine that "defies 'inflexible prerequisites or an exhaustive formula.'" *Gabarick*, 753 F.3d at 553 (quoting *New Hampshire v. Maine*). It is within this Court's province to prevent Proskauer Rose from using the federal diversity statute as both a sword for its own self-interested purpose and a purported shield when its interests change. Indeed, that is exactly what Proskauer attempts to do here. By Defendant's own admission before this Court, the relevant circumstances (e.g. the citizenship and domicile of Ms. Spitzer, one of Proskauer's partners) were identical in both cases. All that changed is Proskauer's interest in the outcome of the jurisdictional analysis, and Proskauer has now tried to fool Plaintiffs and this Court with a stunning about-face.

Plaintiffs urge this Court to deny Defendant Proskauer Rose's Motion to Dismiss on that basis.

### B. Despite Years Of Litigation In Janvey et al. v. Proskauer Rose LLP et al., Defendants Abandoned These Arguments In Factually Identical Proceedings In This Court

Alternatively, and as to both Proskauer Rose and Chadbourne & Parke, Defendants have been in litigation regarding their involvement with the Stanford Ponzi scheme since at least 2012. Ralph Janvey, the court-appointed U.S. Receiver associated with this controversy, first filed an action against these Defendants in the United States District Court for the District of Columbia. On February 6, 2012 ***these Defendants*** filed a motion with the JPML seeking to transfer the case to this Court. That motion was granted on March 2, 2012, and it was not until October 24, 2012 that Defendants filed motions to dismiss the case that ***they sought to transfer*** on the basis of their "stateless person" argument. This Court denied those motions on August 21, 2013 and recommended that the JPML remand the case back to the District of Columbia so that Plaintiffs could seek a transfer back to this Court in the interest of justice under 28 U.S.C. §1631. Plaintiffs subsequently filed their motion to transfer the case back to this Court on February 5, 2014, and Defendants filed cross-motions to dismiss that re-asserted their jurisdictional arguments.

Finally, on July 24, 2014, Judge Kollar-Kotelly issued a memorandum opinion dismissing Plaintiffs' motion to transfer back to the Northern District of Texas. In dismissing Plaintiffs' request to transfer the case back to this Court, Judge Kollar-Kotelly noted that there was no need to transfer the case because Plaintiffs had already filed a second suit in the Northern District of Texas that was stayed pending the outcome of her decision to transfer. *See* Mem. Op., *Janvey et al. v. Proskauer Rose LLP et al.*, Case No. 1:12-cv-00155-CKK (D.D.C. July 24, 2014) [hereinafter *D.D.C. Mem. Op.*] at 12. Indeed, that second suit is currently pending in this Court and both Defendants filed their Answers to Plaintiffs'

6

Complaint on August 14, 2015.[5]  *See, Janvey et al. v. Proskauer Rose LLP et al.*, Case No. 3:13-cv-00477-N-BG, Dkt. Nos. 83, 85 (N.D. Tex. Aug. 14, 2015).

Despite getting the transfer to this Court **for which Defendants petitioned the JPML**, they forced the *Janvey* plaintiffs, the Northern District of Texas, and the District Court for the District of Columbia to spend years exploring jurisdictional arguments that they promptly abandoned once an **identical** suit was filed in this Court.

Simply put, and Plaintiffs' additional arguments and evidence presented herein notwithstanding, Defendants cannot consent to jurisdiction in the Receiver's case and contest it in this case, especially when both cases concern identical facts and parties and are both pending in this Court.

### C. The "Stateless Person" Line Of Case Law Is Anachronistic, Heavily Criticized, And Contrary To The Central Purpose Of Diversity Jurisdiction

Although certainly appealing for defendants with international business operations like Defendants here, the "stateless person" line of case law is a judicially-created interpretation of §1332 that is as restrictively formalistic as it is out of touch with the realities of commerce for the last twenty years or more.  The theory was born out of the *Carden* decision,[6] a 1990 opinion of the Supreme Court which crystalized differing lines of case law regarding the citizenship of partners in a partnership and required that courts consider the citizenship of all partners in determining the citizenship of a partnership for purposes of diversity jurisdiction.  More than twenty years ago and even in that opinion itself, the majority in *Carden* found that "[t]he resolutions we have reached above can validly be characterized as **technical, precedent-bound, and unresponsive to policy**

---

[5] Defendants also filed Motions to Dismiss the *Janvey* complaint on October 3, 2014 (Dkt. Nos. 56 and 58) and associated reply briefs (Dkt. Nos. 68 and 70), and did not challenge this Court's exercise of diversity jurisdiction.
[6] *Carden v. Akroma Assocs.*, 494 U.S. 185 (1990).

***considerations*** raised by the changing realities of business organization." *Carden v. Arkoma Assocs.*, 494 U.S. 185, 196 (1990).  So it is here.

The "stateless person" doctrine relies on several interlocking premises:  Defendants contend that a partnership is considered, for purposes of diversity jurisdiction, to have the citizenship of each and every one of its partners.[7]  Additionally, Defendants contend that a United States citizen domiciled abroad is considered "stateless" for purposes of diversity jurisdiction, as he or she would not be a citizen of a State under §1332(a)(1) or an alien under §1332(a)(2).  Taking these together, Defendants contend that since each has at least one such partner, their large international law firms should be considered "stateless persons," and thus immune from diversity jurisdiction entirely.  Plaintiffs contend that this is a gross misapplication of the diversity statute, and although Defendants characterize this principle as "well settled" in reality it is anything but.

Defendants' claim that *Firefighters' Retirement System v. Citco Group Limited*,[8] a Fifth Circuit opinion issued in August 2015, stands for the proposition that "a law firm partnership [is] stateless because its members include 'U.S. citizens domiciled abroad.'" *Proskauer's Motion* at 7. In fact, and although Proskauer declined to note that this opinion is under review pending resolution of the petition for certiorari filed on October 7, this case has nothing to do with diversity jurisdiction or partnerships.  Rather, this case stands for the unrelated and otherwise unremarkable principle that a district court may not abstain from and equitably remand a properly removed state court action when that action relates to an ongoing Chapter 15 bankruptcy proceeding.  The quoted passage relied upon by Defendants is from a footnote at the beginning of the opinion addressing

---

[7] While this principle may have made sense when Section 28 of the United States Code was first written, it makes little sense when applied to huge partnerships like Defendants.  As of the most recent Chambers & Partners review, Proskauer Rose had 257 partners worldwide, and Chadbourne & Parke had 101.  *See* Chambers & Partners. *Proskauer Rose LLP, available at* http://www.chambersandpartners.com/usa/firm/63226/proskauer-rose (last visited Nov. 28, 2015) *and* Chambers & Partners, *Chadbourne & Parke LLP, available at* http://www.chambersandpartners.com/usa/firm/3823/chadbourne-parke (last visited Nov. 28, 2015).
[8] Case No. 14-30857 (5th Cir. Aug. 6, 2015), *pet. of certiorari filed* Oct. 7, 2015.

an issue with the brief and former participation of Skadden, Arps, Slate, Meager & Flom LLP in the litigation. The Fifth Circuit had no reason to even discuss this point and it was wholly unrelated to the issues or even present participants in the case, and Defendants' reliance on it is misplaced.

The Third Circuit addressed the "stateless person" principle in *Swiger v. Allegheny Energy, Inc.*,[9] a 2008 opinion also relied upon by Defendants. In that case, a terminated employee sued his employer and the employer's law firm for wrongful termination. The Third Circuit, constrained by precedent, was forced to conclude that despite the tremendous size of Morgan Stanley's domestic legal practice the presence of one partner who was a U.S. citizen domiciled abroad required Morgan Stanley's dismissal from the case. *See Swiger*, 540 F.3d at 184. Judge McKee's concurrence in the *Swiger* case exemplifies the inequitable position from which the Third Circuit was required to decide that the plaintiff was unable to sue Morgan Stanley in federal court. As Judge McKee aptly points out:

> The rule that a United States citizen permanently domiciled abroad may not sue or be sued on the basis of diversity of citizenship (sometimes called the "stateless person" doctrine) is a ***doctrine likely born of chance rather than design***. It was recognized (without any particular discussion) by the Supreme Court in *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 828, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). The rule has evolved from judicial interpretation of the words of the diversity statute. Section 1332 applies only to suits between "citizens of different States" and "citizens of a State and citizens of a foreign state." 28 U.S.C. 1332(a)(1)-(2).
>
> The capitalized "State" refers to U.S. states. Hence, a U.S. citizen with no "State" citizenship falls outside the literal terms of the statute. ***This was likely not an intentional omission from diversity jurisdiction, but rather flowed from the (now incorrect) assumption that all U.S. citizens would also be domiciled in a U.S. state***. *See* 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3621 (2008). *See also Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 415–16 (3d Cir.1999) (noting likelihood that problem of "stateless" person—in the international sense—was unanticipated by the Framers).

---

[9] 540 F.3d 179 (3d Cir. 2008).

*Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 188 (3d Cir. 2008) (McKee, J., concurring in judgment) (emphasis added).

This result also flies in the face of the central purpose of diversity jurisdiction. Historically, the purpose of diversity jurisdiction has been to give plaintiffs the ability to litigate in federal court, rather than be forced to come into a state court in which the defendant enjoys some local advantage and/or the state court could be prejudiced against out-of-state litigants.

That is precisely the situation Plaintiffs face here. Rather than litigate their claims in this Court and with its vast experience with the facts in dispute given the volume of litigation that is already pending here involving the larger Stanford Ponzi scheme, Defendants would (ostensibly) have Plaintiffs sue them in New York state court. To wit, Defendants have ***abandoned*** similar jurisdictional arguments in a nearly identical case ***currently pending in this Court***.

Furthermore, there is little factual basis for the Defendants' partners' supposed detachment from the United States. For example, Delia Spitzer, one of the partners who submitted a declaration in support of Proskauer Rose's "stateless person" argument, declared that she is a dual citizen of France and the United States, but has lived in France since 1992 and has "no present intention to return to reside in the United States." *See* App'x In Support of Def. Proskauer Rose's Mot. To Dismiss Plaintiffs' Complaint, Dkt. No. 20 at 33 (Oct. 30, 2015) [hereinafter *Proskauer App'x*]. Despite that declaration, according to Proskauer's website "[d]ue to the close relationships that Delia has developed with her long-standing clients, she has become a senior advisor to them in instances where mergers and acquisitions intersect with other areas of law, including competition law,

restructurings, sensitive labor issues, *litigation in French and U.S. courts*, and international arbitrations." (emphasis added). Ms. Spitzer is also on the board of Columbia Law School and a member of the Women Leaders Working Committee of the U.S. Chamber of Commerce.

The logical disconnect of Defendants' behavior notwithstanding, both Defendants employ hundreds of people and bring millions of dollars in business to the state of New York each year. Thus, there is certainly a potential for some "home field advantage" there. The single animating policy reason for diversity jurisdiction is at the forefront of this dispute, and Defendants would have this Court ignore that and blindly proceed down a line of case law that the Supreme Court, the Third Circuit, and numerous others have recognizes is maladroit and inconsistent with both the modern business reality and the purpose of the statute itself. For these reasons, Plaintiffs urge this Court to ignore Defendants' invitation to proceed down this road, and to deny Defendants' Motions to Dismiss.

### D. The Presence Of Foreign Plaintiffs Does Not Defeat Diversity Jurisdiction In This Case

After exhausting all other arguments, Defendants finally attack the substantive jurisdictional allegations in Plaintiffs' complaint, and complain that the presence of foreign citizens on both sides of the litigation destroys diversity, and that there are not enough jurisdictional allegations in the complaint to properly allege diversity jurisdiction in the first place. *See Proskauer's Motion* at 17–18, *Chadbourne's Motion* at 12–13. Like the rest of Defendants' arguments, these miss the mark. First and foremost, the premise of Defendants' argument regarding the existence of foreign citizens on both sides of the litigation is wrong. Defendants rightly point out that nineteen of the twenty-two Plaintiffs in this case are foreign citizens. *See Proskauer's Motion* at 18. But on the other side, there are only limited liability partnerships

registered in the state of New York.  Defendants apparently ask this Court to consider them both "stateless" for purposes of that argument and foreign citizens for purposes of this one.  As Plaintiffs have pointed out time and again, Defendants cannot have their cake and eat it too.  And Proskauer admits as much—just five pages earlier, Proskauer argues "Proskauer Is **Not a Citizen of Any Domestic or Foreign State for Diversity Purposes**."  *Proskauer's Motion* at 12 (emphasis added). Alternative arguments are certainly permitted, but alternative facts are not.  Furthermore, and as described more fully above, Proskauer pleaded in an earlier case before a different federal court that diversity jurisdiction was appropriate because it had filed "a civil action between citizens of different states."  *See Proskauer Rose LLP v. Blix Street Records Inc. et al*, Case No. 2:06-cv-4040 at ¶5 (C.D. Cal. June 26, 2006).  For these reasons, Proskauer Rose LLP should at a minimum be judicially estopped from changing its mind regarding its citizenship now that it is a defendant instead of a plaintiff.  Chadbourne & Parke similarly told the Southern District of New York that its case should be remanded to state court because its action was "between citizens of foreign states."  *See Chadbourne & Parke LLP v. Remote Solution Co., Ltd.*, Case No. 1:05-cv-00386 (Feb. 4, 2005).  These Defendants cannot change their tune simply because they are defending a lawsuit rather than initiating one.

Relatedly, if this Court is inclined to accept Defendants' assertion that they can simultaneously hold the citizenship of their hundreds of partners simultaneously, then what they pejoratively call a "jurisdictional pigeonhole" resolves the matter entirely.  28 U.S.C. § 1332(a)3 provides that district courts will have jurisdiction over cases involving foreign plaintiffs and defendants if there are also US citizens on both sides who are completely diverse in citizenship. Here, if Defendants' claim to simultaneously hold the citizenship of all of their partners, and at least one of those partners is a citizen of a different state than any of the Plaintiffs domiciled in the

United States, then this dispute can properly be considered one between diverse U.S. citizens with additional foreign parties and that ends the inquiry.

This Court can properly consider the dispute to be between Alvaro and/or Maritza Guido, United States citizens living in Florida, and Proskauer Rose LLP, a partnership with the citizenship of all of its partners including, for example, any of its partners in New York.  The citizenship of any additional parties, whether they be other Plaintiffs, Chadbourne & Parke, and any other citizenship Proskauer Rose may have, are then all irrelevant under §1332(a)(3).

Understanding the citizenship of partnerships *collectively* rather than *concurrently* also comports with the settled understanding of corporate citizenship for purposes of diversity, which provides that a corporation may be hailed into court on the basis of diversity jurisdiction (1) the state in which it is incorporated and (2) the state in which it maintains its principal place of business.  *See* 28 U.S.C. §1332(c)(1)*; see also Hertz v. Friend*, 559 U.S. 77 (2010).   Applying Defendants' flawed understanding of jurisdiction over juridical persons, any corporation incorporated in one state but with its headquarters in another would be immune from suit in federal court by foreign customers.  As of 2012, the New York Times noted that this posture applied to corporate giants such as American Airlines, Apple, Bank of America, Berkshire Hathaway, Cargill, Coca-Cola, Ford, General Electric, Google, JPMorgan Chase, and Wal-Mart—all of which are incorporated in Delaware and have headquarters elsewhere.[10]  If this Court were to accept Defendants' understanding of multiple possible domiciles for purposes of diversity jurisdiction, none of those companies would be amenable to suit by foreign plaintiffs in U.S. courts.  Of course, that is not true.  Such an odd result would bend the jurisdictional rules to the breaking point, and

---

[10] *See* Leslie Wayne, *How Delaware Thrives as a Corporate Tax Haven*, The New York Times (June 30, 2012) *available at* http://www.nytimes.com/2012/07/01/business/how-delaware-thrives-as-a-corporate-tax-haven.html (last visited Dec. 4, 2015).

this Court should decline Defendants' invitation to similarly contort the rules as applied to partnerships.

Indeed, the Eleventh Circuit found that clarifying that the federal courts have jurisdiction over disputes involving a U.S. citizen on one side and both a citizen and an alien on the other side was the primary purpose of Congress' enactment of §1332(a)(3) in 1948.  *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 858 (11th Cir. 2000).   Although Defendants appear to argue that they each have the citizenship of all of their partners *collectively*, it would lead to strange results if Defendants were allowed to assert all of those citizenships *individually and concurrently* in an effort to dodge the jurisdiction of the federal courts.  Such a result would render §1332(a)(3) a nullity, and Plaintiffs submit that Defendants' argument should be rejected on that basis.

### E.  Plaintiffs Have Alleged Sufficient Facts To Support Diversity Jurisdiction

Defendants complain that Plaintiffs' allegations as to citizenship are insufficiently detailed to support a finding of diversity jurisdiction.  This is a slender reed, at best.[11]   Courts have consistently interpreted §1332(a) as not requiring anything more than a plain statement of a party's citizenship and domicile.  According to the Seventh Circuit, "[t]he statute does not say anything about specifying from which foreign state an alien hails, and so on its face it does not appear to demand more than an allegation that someone is "a foreign citizen or subject." *Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 627 (7th Cir. 1998).

---

[11] Defendant Proskauer Rose's consternation as to Plaintiffs' jurisdictional allegations is all the more surprising given that their jurisdictional allegations as to Blix Street Records in the Central District of California consisted only of the following sentence:  "This Court has original jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs." *See* **Exhibit 1** at ¶5.  Proskauer relied on this single jurisdictional sentence throughout litigation for several years, including trial.

As the Third Circuit appropriately summarized, "For diversity purposes, an alien is an alien is an alien." *Dresser Indus. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 500 (3d Cir.1997). Additional details are irrelevant to the analysis. *See generally* 13B Charles Alan Wright et al., Fed. Practice & Procedure § 3604, at 396 (2d ed. 1984) ("[I]f the allegation of alien citizenship is plain, technicalities are unimportant."). That said, Defendants will have the opportunity to request any additional information as to Claimants' citizenship that they may desire as part of the discovery process.

### F.  Plaintiffs Should Be Entitled To Amend Their Complaint If Necessary

Lastly, Defendants have asked this Court to dismiss Plaintiffs' Complaint based on their perception that the jurisdictional allegations as to the Plaintiffs that are U.S. citizens were not alleged with sufficient detail.  This is the type of technicality that can be easily and routinely addressed with amendment, if necessary.  *See Whitmire v. Victus Ltd.*, 212 F.3d 885, 887-88 (5th Cir. 2000) (internal citation omitted) ("We have repeatedly noted that § 1653 is to be broadly construed to avoid dismissals of actions on purely "technical" or "formal" grounds.")  *See also Goble v. Marsh*, 684 F.2d 12, 17 (D.C.Cir.1982) (in enacting § 1653 "Congress intended to permit amendment broadly to avoid dismissal of suits on technical grounds").

Much to Plaintiffs' surprise, Defendants have also asked this Court to dismiss their claims "with prejudice to re-litigating federal subject-matter jurisdiction." *See Proskauer's Motion* at 16. Putting aside the question of which federal statutes Defendants are concerned that they may have violated, such a restrictive and prejudicial dismissal does not comport with the rules governing amendment.  In support of their position Defendants cite *In re Katrina Canal Breaches Litigation*, a 2009 decision by the Fifth Circuit.[12]  That case relies on an earlier Fifth Circuit decision,

---

[12] 342 F. App'x 928 (5th Cir. 2009), *Proskauer's Motion* at 12.

*Whitmire v. Victus Ltd.*, which rightly describes inappropriate amendments such as alleging additional damages to satisfy the amount in controversy requirement for diversity jurisdiction, or adding additional parties to preserve a federal forum.  212 F.3d 885, 888 (5th Cir. 2000).  The Supreme Court makes clear that inadequate jurisdictional allegations can be amended, but (of course) inadequate jurisdictional facts cannot.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989).  Whether Defendants have violated any federal statutes is (in cases of federal subject-matter jurisdiction) a jurisdictional allegation, not a jurisdictional fact.  To hold otherwise would be to effectively grant Defendants immunity from liability for certain violations of federal law, and to fly in the face of the well-established principle that "[u]nless the record clearly indicates that the complaint **could not be saved by any truthful amendment**, we generally afford an opportunity for amendment."  *Whitmire v. Victus Ltd.*, 212 F.3d 885, 888 (5th Cir. 2000) (quoting *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997)).

## III.  CONCLUSION

Defendants have spent pages complicating a very simple question:  whether a group of foreign and U.S. citizens can properly sue two limited liability partnerships in federal court.  Plaintiffs submit that the answer is yes.  Defendants apparently agree when they are the ones claiming injury, but urge this Court to ignore those previous statements now that their interests have changed.  In fact, Defendants raised these arguments when the U.S. Receiver originally filed its suit against them in the District Court for the District of Columbia, but promptly abandoned them when that suit was re-filed here.  This in and of itself is a classic example of judicial estoppel, and should end the instant dispute.

Moreover, Defendants rely on a body of case law that is malformed and out of touch with both the congressional intent behind diversity jurisdiction and the business realities in which

Plaintiffs find themselves.  Chadbourne & Parke and Proskauer Rose have hundreds of partners around the world, and that much is undisputed.  As early as 2004, roughly 10,000 of the 110,000 lawyers at the top 250 law firms in the United States worked overseas.  Michael D. Goldhaber & Carlyn Kolker, *Supersonic Lawyers*, Am. Lawyer (May 2004).  Defendants are part of a group of large, international law firms and now ask this Court to proclaim an "international law firm privilege" exempting them from federal diversity jurisdiction that would require every client of every single one of those firms' clients to travel to those firms' home state court to adjudicate their claims.  Such a result plainly fails to comport with the purpose and design of diversity jurisdiction, and Defendants' motion should be denied on that basis.

Plaintiffs' jurisdictional allegations are sound, and for the foregoing reasons this Court should deny Defendants' motion and allow this case to proceed to discovery.

 Dated:  December 4, 2015                                    Respectfully submitted,

<div style="margin-left: 50%;">

/s Kyle G. Bates
Peter B. Schneider, TX Bar No. 00791615
SCHNEIDER   WALLACE   COTTRELL
KONECKY WOTKYNS LLP
3700 Buffalo Speedway, Ste. 1100
Houston, Texas 77098
Telephone:  (713) 338-2560
Facsimile:  (866) 505-8036

Todd M. Schneider,* CA Bar No. 158253
Kyle G. Bates,* CA Bar No. 299114
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
kbates@schneiderwallace.com
*Attorneys for Plaintiffs*

*- admitted *pro hac vice*

</div>

17

## <u>CERTIFICATE OF SERVICE</u>

On December 4, 2015, I caused the foregoing document to be electronically served upon the attorneys of record in the above case, in accordance with Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.1(d), by causing a copy of the same to be filed via the electronic case filing system of the U.S. District Court for the Northern District of Texas.

<div align="right">/s/ Natalie M. White  </div>